WILKERSON *versus* GOLDTHWAITE.

If in entering a judgment, the Clerk omits to insert the amount recovered, the judgment may be afterwards amended, and the amount inserted *nunc pro tunc*.

On overruling a motion, to enter such judgment, whereby costs are rendered against a party, a writ of error will lie.

In this case the plaintiff in error, as administrator of George Wilkerson, deceased, moved the Circuit Court of Montgomery county, for an order to perfect a judgment rendered some time before, in favor of his intestate, against the defendant. George Wilkerson had brought his action against Goldthwaite to recover the amount of a bill of exchange. There was a demurrer to the evidence, and on that demurrer a judgment was rendered for the plaintiff. The clerk had omitted, in entering the judgment, to insert the amount recovered; and after several years had elapsed, during which executions had issued, and been returned without making the money, a notice was served on the defendant, and a motion made for an

order, *nunc pro tunc*, to perfect the judgment. The Court overruled the motion, and a judgment was given against the plaintiff, for costs. To revise this decision a writ of error was taken to this Court.

*Vandergraff*, for plaintiff.—This motion was made to amend the judgment which was imperfect. The matter in controversy had been decided by the Court below, but the same was not entered correctly. The error is a clerical misprison, and is amendable at Common Law, at any time after. This power the Court has always exercised over its own officers, and what harm could arise from it in this case? There is nothing asked to be changed. It is a mere direction to the clerk to do now, what he should have done in the first instance after the judgment of the Court was given. If there were an error in judgment in the decision, the party had a remedy on a writ of error, but this error is not of this kind: it is one made by the clerk in entering the judgment, and it may be amended after the term of the Court had elapsed, in the same manner that an amendment may be made by the sheriff. This position must always be received as correct so long as men are liable to err in the discharge of their duties

If amendment may be thus made, when then must this application be made to amend? At any time after, provided it is done before the legal presumption would create a presumption of payment, which is twenty years; for the record would show a subsisting debt of record. That is the time to which it should be limited, and that only.

Though this application was made five years after the judgment was given, it is still in time, because

the record shows the debt as well now as then. The presumption in law is the same now that it was five years ago, yet he can not now issue an execution to collect his debt. The reason, is not a presumption that the debt is satisfied, but only a clerical defect— 5 *Stanton* 557. In 1 *Strange*, 189, the doctrine is fully settled. In it a distinction is taken between judicial and ministerial acts. We wish to eke out and complete a mere ministerial act—we wish not to change, deface or alter the judgment—we wish only to supply that which is apparently defective, as the record shows the proper amount of the bill of exchange. The doctrine in *Strange* is adopted in 1 *Sanders* 146. These authorities are sufficient to establish the position, that it is proper to amend a ministerial error, and as to the time there can be no other rule or limit than the time fixed for presumption of payment. If this correction can not be made by the Court, we are out of the reach of an error committed by one of its officers. The time of five years delay to make this application, is accounted for, from the fact of there having been many executions issued, and the presumption is, the Court proceeded under the impression that the judgment was correctly entered, and will excuse the want of application to correct it.—6 *Term Reports* 8, 1 *Henry Bl.* 338, 2 *Strange* 786, 3 *Maul. & Selwyn* 591, 3 *Term Rep.* 348, 349 ; 5 *Burrow* 2730, 3 *Johnson* 526, 1 *Caines' Rep.* 109.

The Courts should not suffer the party to be seriously injured in his rights, because an officer has not done his duty, and no case can be found where they have suffered it. The rights of third persons are sometimes saved, and entry is made to operate between the parties reserving the rights of

21

third persons—3 *Cowen* 39; but Courts always correct a ministerial error, when justice demands it—14 *Johnson* 219, 17 *ib.* 86, 19 *ib.* 244.

This Court has several times passed on this subject, and they have always acted on the principles for which I have contended.—See *Judson* vs. *Banks*, *Minor's Reports* 170, 1 *Stewart* 66, *Minor's Reports* 395.

The only remaining question is, if this Court can review the decision on a case of this kind. It has done it in at least five other cases. This Court was established for the express purpose of correcting errors, and it ought to exercise its influence over the Courts below in every case where it can safely be done. If this Court can not revise this decision, it does not answer the object of its creation.

*Goldthwaite, contra.*—I admit that this is a ministerial error, but I deny that ministerial errors were always amendable at Common Law. I will refer to the English statute,—1 *Bacon, letter B, Title Amendments & Jeoffail's*—8 *Henry* 6 *C.* 12, and many of the authorities refer expressly to this statute. The case cited in *Strange* decides only as to the entry of the amendment, as to continuances and nothing more,— *Bacon, letter A, same title and book.* This authority shows conclusively that at Common Law, nothing is amendable in the record, not even a letter or word.

1 *Comyn* 603, says, that in amendments no error could be amended after the expiration of the term. So the Common Law is here, and we must look to our statutes only—*Dig.* 154. This, it is true, goes very far. Under our statute, before there is an amendment made, there must be a judgment. It is

under the 3d clause of the statute, if any, that the amendment of the judgment must be made, for there is nothing else in the statute to authorise it. Is the word judgment mentioned or referred to, and is there any thing to authorise it? I am aware that the decisions of the Courts are the other way; but in New York the decisions are on their statutes, and here we are to decide on our own statutes. If the decisions which have been read were Common Law, why was it necessary to pass our statute, and why were the English statutes passed? This judgment was entered in 1822 or 1823, and the law which was then in force on the subject must govern. The Common Law as it was, and our statute thereupon, is all the authority we have to go upon. Our statute then is to be carefully looked to, and we are to have nothing to do with all the authorities cited; but as an answer to them, I shall say, that the point was not raised or adverted to, and they can be no authority.

But if the Court decides against me on this point, then I shall say—

1st. That this is a matter of discretion, and a writ of error does not lie.

2nd. If the Court did wrong, there was another remedy which should have been pursued.

1. The statute directly makes it a matter of discretion in the Court to amend. When a party takes a nonsuit, can he take a writ of error for refusal to set it aside, as in the very case under consideration? So in cases of continuances, a loss of the debt may be the consequences, yet no writ of error lies on this. The English Courts consider it as a matter of discretion.—*See* 2 *Strange*, 1209. If it was not, it would be compulsory on Courts to make it, no mat-

ter how hard it might be in particular cases. So, if they have sometimes refused, it is proof that it is a matter of discretion.

The case in 1 *Wilson*, 61, shows that the Courts can go into consideration of circumstances, as they do on motions for a new trial, which is proof that it is discretionary.——2 *Strange* 1002, 6 *Taunton* 632.

There is not a precedent to be found in the whole English books, where a writ of error was taken on such judgment——See 6 *Taunton* 58, 6 *ib.* 419, 1 *Lord Raymond* 548, 1 *Henry Bl. R.* 36, 4 *Term. Rep.* 228, 1 *Hardin* 171, 2 *Bur.* 756. Now, how do the American authorities consider this matter?——See 17 *Johnson* 346, 6 *Cranch* 217, 2 *Wheaton* 208, 1 *Mason* 153, 4 *Wheaton* 73, 9 *ib.* 576, 4 *Cranch* 273, 7 *Cowen* 573, 6 *ib.* 392.

In the case in 1 *Stewart* 66, the question arose on the return of a *sci. fa.* Then, Wilkerson, who could not become a party by motion, should have issued a *sci. fa.* to revive it, because a year and a day had elapsed.——2 *Tidd.*—*sci. fa.*

2. There is another remedy : he may move this Court for a *mandamus* to issue, to compel the Court to proceed and do what is right.——2 *Dunlap's Practice* 1130, 5 *Mass.* 435, 9 *ib.* 389. Here are two authorities from Massachusetts, which are in point. This is not a final judgment. Can they not renew their application if they produce a further showing under a *mandamus* at another time? Here they complain that they obtained a judgment, but the Court refused to enter it; the same as where, in Massachusetts a verdict was rendered, but the Court refused to render judgment on it. 5 *Day* is a very strong case, 286, 235.

It is shewn in 6 *Johnson* 280, that on a motion for a *nunc pro tunc* judgment, a *mandamus* will lie, to allow a deed to be filed *nunc pro tunc* after error brought. The power to issue a *mandamus* is a general power to compel inferior Courts to do what they should, that they would not do so if the inferior Courts had a discretionary power. 1 *Johns. Cases* 281 ; 2 *Johns. Cases* 479 : 19 *Johns. Reports* 247 ; 3 *Wheaton* 433 ; 4 *Henn. & Munf.* 173.

The statute of 1824 was passed subsequent to the rendition of judgment in this case, and it shows two things,

1st. That the power did not exist before.

2nd. That there is a limitation in it as to time.

I will advert to one fact. There was an error committed, and it is the reason why a demurrer to the evidence was put in. There was a variance in the date of the bill with the declaration.

The Court gave judgment for the plaintiff in error, when they should have given judgment for defendant in error. The Court said they had a right to amend, but no amendment was asked for or made. 1 *Harris & McHenry*, 223, shews that after demurrer to evidence it was too late to amend, and no amendment could have been then made——4 *Wendell*, 409. There was an attempt made to correct the error, but the error was taken advantage of in a legal way. If it had went to the jury the amendment could not have been made, and a non-suit would have been the consequence.

*Thorington*, in reply.

The act of the Court was perfect; it had decided fully the matter in controversy between the parties.

The clerk omitted to make the correct entry, and this omission was unknown to the plaintiff. The objections are, 1st. That there is no power in the Court to make the correction. 2nd. If power once existed it is gone. 3rd. That the Court erred in giving the first judgment; but the correctness of the first judgment cannot here be questioned, as it is not before us. Many statutes of amendments have been cited. This is not an amendment, but it is not material. Mr. *Goldthwaite* says, that all decisions of amendments are founded on statutes, but this is not the case. The note in *Sanders,* says that at Common Law, you may eke out what is necessary in a record. The statutes were not made to correct cases like this, but to change something. In the case in *H. Blackstone,* the judgment was for less than it should have been: there it was enlarged. The one in *Strange,* 786, was an omission to give judgment on certain counts : this was a case of an amendment. The case in *Maule & Selwyn,* was an omission: the record was afterwards perfected. This was a case of eking out, and it was good at Common Law. That authority applies strictly to this case: a practice has here grown up, and as it is covenient, the Court will sustain it.

We are told that we could ask for a *mandamus,* to obtain a remedy, but what kind of *mandamus* could we send down to the Court below? In New York a *mandamus* goes to an officer who is permanent in his office. The remedy to enforce a *mandamus* compels obedience by attachment. If you send a *mandamus* to the present Judge of the Circuit Court, he will say he knows nothing about the matter—that he was not sitting when the judgment was given. But here the *mandamus* would go to one of this very

Court, from himself——he must answer to himself.  In this case the Judge has not refused to act, he has acted and given judgment for cost: he has given judgment according to law as he believes it to be: Then it is evident that a *mandamus* does not lie.

Our statute and constitution have given to this Court a general supervising power and control over other jurisdictions.

In relation to the time of moving for this amendment, this Court has permitted amendments after longer time than this—see *Laprade* vs. *Crowell*.  It is true that the Courts generally require it to be done early, because false motions might be made and they would tend to delay; but this does not apply here. The plaintiff showed anxiety to proceed by suing out executions.  The statutes of 1824, are not disabling statutes; for amending and creating anew, are two . distinct things.  It is unnecessary to labor this case as I would if the practice on it had been established: the law must be settled, and it is all important th t it should not be disturbed.

WHITE, J.—George Wilkerson now deceased, commenced suit on a bill of exchange against Henry Goldthwaite, in the Circuit Court of Montgomery county.  To the evidence adduced by the plaintiff, the defendant demurred, and at the April term 1823, the Court overruled the demurrer and adjudged the evidence sufficient to maintain the issue on the part of the plaintiff.  The clerk in entering the judgment failed to mention the sum recovered.  The words of the judgment after stating the case and the examination thereof by the Court are as follows : " It seems to the Court that the said evidence is sufficient in

CASES DETERMINED

WILKERSON *vs.* GOLDTHWAITE.

law to maintain the issue joined between said parties; therefore, it is considered by the Court that the plaintiff recover of the defendant," without saying to what amount. Before the defect of this judgment were discovered several executions issued ; by which, however, none of the money was made. The present plaintiff in error, as administrator of George Wilkerson, and upon sufficient notice given, moved the Court below, at the September term 1828, for an order *nunc pro tunc*, to perfect said judgment. This motion was overruled, and a judgment entered against the plaintiff for costs. This decision of the Circuit Court is now before us on writ of error for revision. The case presents questions of importance, and perhaps some of real difficulty. In argument, it is conceded that, as the clerk was bound to insert the sum recovered, the omission to do this was a clerical error or misprision. But the defendant contends that the judgment could not be amended at the subsequent term by the rules of the Common Law, or the provisions of our statute of amendments passed in 1807, and that if embraced by the act of 1824, more than three years had elapsed, and the right to amend was thereby barred. It is undeniable, that the Common Law placed many restrictions on the Courts in granting amendments, and hence the necessity of the various statutes of England to prevent injustice from mistakes and casualties, incident to the *imperfection* of human action. But notwithstanding this strictness, mere ministerial acts were amendable at Common Law after the term had passed. The Chief Justice, in delivering the opinion of the Court, in the case of *Phillips* vs. *Smith*,[a] says, " that continuances might be entered at any time, as well after as before the judg-

[a] 1 Strange 139.

ment, and he took a distinction between judicial and ministerial acts." The first of which, he says, were at Common Law, amendable at any time; and as to amendments of judicial acts, "a difference was made between such as deface and alter the record, and those which are only additional to it, made in order to eke out and complete it." Now, if the defect here sought to be amended, were in strictness, a judicial act, might it not, according to this authority, be amended. It would be merely completing the record, or in the language of the book, ekeing it out, so as to make it complete. Without such amendment the judgment is most inoperative and incomplete: and if to perfect it be allowed by Common Law, then it might well have been done without the aid of statutes. But it is admitted, the omission is a clerical mistake, the insertion of damages is a ministerial act, and therefore clearly embraced by the principles of the case referred to.

In the note to 1 *Saunders' Pl.* 346, Lord *Mansfield* says, " one point is extremely clear, that the return of the caption to this Court is merely a ministerial act, and admitting it to be a ministerial act, the rule in *Phillips* vs. *Smith* is conclusive, *that ministerial acts are amendable at Common Law at any time.* On such applications as this, the Court of B. R. has adopted the rule to amend, whenever the ends of justice require.

In 6 *Term Rep.* 8, *Mara* vs. *Guin*, Lord *Kenyon* uses this strong language, " the forms of the Courts are always best used, when they are made subservient to the justice of the case ;" and the same distinguished jurist, in a case from 7 *Term R.* 699, which I observe referred to by another book, (but

which I have not before me,) says expressly, that such amendments are not made under the statutes of *Jeofails,* but under the general authority of the Courts.

The Court in the case of *Shorts* vs. *Coffen, executor of Coffen,*[a] after taking two or three days to consider, were clearly of opinion to amend a judgment against an executor, *de bonis propriis,* by making it *de bonis testatoris, si, &c.; et de bonis propriis, si non, &c.*: and that too, even after writ of error had been brought; and *in nullo est erratum* pleaded; and an argument in the Exchequer Chamber—(upon the authority of this case,)—the Court of New York allowed precisely a similar amendment.[b]

In the case of *Samin and others* vs. *Drake,*[c] the Court permitted the judgment to be signed *nunc pro tunc,* and observed, " the omission was the neglect of one of their officers which ought not to prejudice any one." Many other authorities might be adduced, if necessary, to the same point. But these surely are sufficient to shew that, by the very constitution of Courts of justice, and to answer the ends of their creation, they have, by the rules of the Common Law, power, so far to correct the omissions of their own ministerial officers by entering judgments *nunc pro tunc,* as not to allow their mistakes to defeat the purposes of justice. This question, however, is not strictly open for discussion in this State. It has long been the practice of the Circuit Courts to enter judgments *nunc pro tunc,* whenever essential to the interest of suitors and where the record furnished sufficient *data* for such judgments : and this practice has frequently been sanctioned by the adjudications of this Court. The cases of *Fuqua & Hewlett* vs.

*a* Burrow 2750

*b* 1 Cowen 132
*c* 1 Cain 9

*Carriel & Martin,*——*Clemens* vs. *Judson & Banks,* and *Draughan* vs. *The Tombeckbee Bank,* are to this point.

a Minor's Rep. 170. b ibid. 395.

But it is further insisted, that even if this power be allowed the Courts, it is merely a discretionary power, from a decision in the exercise of which a writ of error will not lie. It is true inferior Courts do possess certain discretionary powers, which if abused, can not be corrected on error: and perhaps the nature of these powers will best appear by reference to some of the cases in which they are known to exist. Continuances, new trials, and motions to amend pleadings out of the time prescribed by statute for their being filed, are of this character. In such cases, though a mistake of a Court might as seriously injure a party as an error in the final judgment, yet a writ of error would not lie. The policy of the law requires this; for, from the very nature of the enquiries, it is impossible that a revising Court should be as fully in possession of the facts necessary to a judicious exercise of such discretion, as the inferior tribunal, before which they are all developed. As, however, there are evils attending this restriction, it should never be carried beyond the reasons on which it is founded; and perhaps it may be assumed as a good general principle, at least, that whenever a case can be exhibited of record to an appellate Court, in precisely the same attitude which it presented in the Court below, a writ of error will lie, if the judgment be final. What then is there in this case, which was exhibited in the Circuit Court, and that does not appear of record here?

We have before us the entire grounds of the motion, and all the facts of the case. I can conceive, of

nothing which would have influenced the Circuit Court, which is not now before us for our consideration.

But again, I think it fairly deducible from the authorities already referred to, on another branch of this case, that where a ministerial officer of a Court is required by law to do a particular act, which he fails to do, greatly to the prejudice of a suitor's rights, it is not duly the province of the Court to correct that error, when there is sufficient *data* on which it can be amended with legal certainty and precision, but that it is the undoubted right of the injured party to demand that the error should be corrected. The judgment was the means of redress given by the law to the party; but as at first entered, it was insufficient for the purpose designed. Then surely, upon a proper case presented to a Court, having ample powers, it was as much a matter of right to demand its amendment, in order to attain the very object of the law itself, as to have had it entered correctly, when the demurrer was disposed of. It is, however, farther contended, that admitting a writ of error might have been prosecuted by the other party, had the Court allowed the amendment, it will not lie, as the case is now situated—the Court having refused the motion. That it is not a final judgment within the meaning of our statute, allowing writs of error; and that if the plaintiff be aggrieved, he must seek redress by a *mandamus.* Why was not this a final judgment? It was clearly a final disposition of the case on the circuit, for no other Judge, according to the established practice of our Courts, would, afterwards, have heard the motion. It was, moreover, a judgment for costs, by which the party was aggrieved,

and for which an execution would have issued. To my mind there is not that wide distinction between a judgment denying and one sustaining a motion, which is supposed: at least this Court has not recognized the distinction. For, during this very term, we have taken cognizance of a judgment of the Circuit Court of Jefferson county, where there was a *refusal*, on motion, to enter satisfaction of record, and have affirmed that judgment.

In the case of *Creighton* vs. *Denby*,[a] the point was expressly made, whether a writ of error would lie from a decision of the Circuit Court, overruling a motion to quash an execution; and the Court, upon the authority of several cases there cited, say, that the decision was a final judgment upon the matter therein litigated; and the party dissatisfied had a right to have it reviewed in this Court. Indeed the doctrine seems to have been so well understood that in the case of *Thurman* vs. *Matthews*,[b] which was a writ of error to reverse for refusing to arrest the judgment below, the question was not made; though in other States it has been determined that on such refusal, error would not lie.

Between the case in *Minor's Reports*, and the present, I can perceive no difference in principle; and we are not disposed to disturb a settled and salutary rule to favor what, at best, is nothing more than a distinction without a difference; especially when the remedy by *mandamus*, if it could be had, would be dilatory and badly adapted to the organization of our Courts. We are therefore of opinion, that the Court below erred, in refusing to amend the judgment *nunc pro tunc*—for which the judgment must be reversed, and the cause remanded.

[a] Minor's Rep. 250.

[b] 1 Stewt's Rep. 385.

In doing this, we have not felt ourselves authorised to go farther back than to the single enquiry, whether the Circuit Court ought, or ought not, to have sustained the motion to perfect the original judgment, by allowing the amount recovered to be inserted. Upon all the other features of the case, the Judge had passed in overruling the demurrer to the evidence, and if he erred, it will be matter for future revisal.

TAYLOR, J.—As my opinion corresponds with that of the majority of the Court, as delivered by my brother *White*, on every point but one, it is only necessary for me to notice that one.

I believe that there is no final judgment in the Court below, and that the motion to dismiss the writ of error should be sustained.

I understand a final judgment to be *res adjudicata.* That the question which has been decided can not be again agitated in the Court which made the decision, in the same form. This is certainly not the case with respect to a motion for a judgment *nunc pro tunc*, which is overruled. I am aware that some additional reason must be shewn before the Court would again hear a motion which had, at a previous term, been overruled, but it is by no means difficult to imagine cases in which it would be done. If in a new county, where books were not to be had, such a motion were made and overruled, but upon consulting authority, it was found that the cases all sustained the motion, certainly it would be heard again. But it is not difficult to suppose a case, in which extreme injustice would attend a contrary practice. A motion of the kind is made and overruled, from the insufficiency of the evidence adduced in support of

the motion. It is reasonable to be presumed that the Supreme Court would decide in the same way ; but afterwards, an old docket, which had been mislaid, is found, containing a distinct memorandum of the judgment, in the hand writing of the Judge who presided. This additional testimony can not be used on the trial in the appellate Court, because, strictly, forms no part of the record : is the party to remain without redress ? So the Court determines.

But it has been said that the peculiar organization of our Court demands the decision, that one Judge will not hear the judgment of his predecessor controverted. To my mind this objection produces no difficulty. By the alternation of the Judges, it was never intended to change the rules of decisions, nor to cast new burthens upon suitors, and although I should feel as great a delicacy as any person in rehearing points discussed which had previously been decided by another member of the bench, in the same cause, yet if new facts were introduced which were not before him, I should not hesitate to hear and to determine.

But this is not a matter left to reason alone; the thorities are full upon the subject.

It is unnecessary to adduce authority to prove that a writ of error can be sued out upon no other than a *final* judgment. This position has been taken so often by this Court, and is so completely within the words of our statute, which is affirmatory of the Common Law, as maintained by an unbroken chain of decisions, that it would be but time lost to occupy any on this part of the subject. But the question is, *what is a final judgment ?*

In the case of *Horne* vs. *Barney*,[a] Chief Justice [a] 19 Johns. R. 247.

*Spencer* speaks of it as settled law, that if a judgment be arrested for the insufficiency of the declaration, that a writ of error will not lie. See the same doctrine in *Bayard* vs. *Malcolm*.[a] When a judgment is arrested, there is a decision of the Court arresting. that judgment, and costs are uniformly given to the party making the motion; yet it is not a final judgment. Another action may be brought on that which constitutes the foundation of the suit in which the judgment was arrested. So it has been determined in this Court; that a writ of error will not be sustained on a judgment of nonsuit. Why? Other reasons may be given, it is true, but the strongest is because it is not a final judgment; the party has remedy by another action. The same, it seems to me, is the only consistent doctrine in the case before the Court. A Court overrules a motion for a judgment *nunc pro tunc*. Is there a final judgment rendered by the Court? Does the case assume the nature of *res adjudicata?* Surely not. The plaintiff may institute another action, and prosecute it to a recovery. It is unnecessary to multiply authorities to support this position.

[a] 2 Johns. R. 101.

But it is said, that this Court has adopted a different rule. It is true, that the decision, on a motion to quash an execution, whether sustaining or refusing it, has been determined by this Court to be ground for error.

The opinion given in the case rests for authority entirely on some Virginia cases; but neither in that State, nor any other, can a decision, analagous to the one which is asked in this, be found. A motion to quash an execution, even *if* unsuccessful, places the party in a very different situation from one in arrest

of judgment, or for a judgment *nunc pro tunc.* In the first case, the plaintiff has not only a subsisting judgment, but the means of immediately coercing that judgment. Delay here would be dangerous, and before the defendant could regularly proceed by *mandamus*, it might be too late. Not so here—none of this urgency exists, and the party has ample time to pursue that remedy, which has heretofore been open to him, without the probability of being placed in a worse situation.

It is certainly unnecessary to answer the argument which is founded upon the decisions of this Court, sustaining writs of error which brought up cases after a judgment *nunc pro tunc* had been ordered by an inferior Court. It requires no astuteness to perceive that, in such case, there is a final judgment. The record is made perfect by the judgment, and the whole case is open for re-examination by this Court. The party is not confined to errors committed in the proceedings upon the judgment *nunc pro tunc*, for that constitutes only a part of the record which it perfects.

I am, therefore, of opinion, the writ of error should be dismissed.

My opinion was the same in the case of *Baylor* vs. *McGregor & Darling*, decided at a previous day of this term.